LUCILLE MOBLEY, as Administratrix of the Estate of GREEN E. MOBLEY, Deceased, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 30392.) — Appeal by the claimant from a judgment of the Court of Claims, dismissing her claim as administratrix for damages by reason of the death of the intestate. The proof upon the trial showed that, while the decedent was an inmate at Great Meadow Prison, he was attacked by two fellow prisoners and stabbed with paring knives which they had been allowed to use in the prison kitchen. The decedent died as a result of the stab wounds. The decedent had been assigned to work as a pot washer in the vegetable room of the kitchen. The two assailants, Attillio and Brusco, had been assigned the task of dicing potatoes in the same room. Next to the kitchen, there was a loading platform which led to a special recreation yard into which kitchen workers who had finished their assigned tasks were customarily permitted to go. Mobley left the kitchen and went out on the loading platform. The two assailants followed him carrying the paring knives which they had been using in the kitchen. A scuffle ensued in which the decedent was presumably stabbed. The decedent broke away and ran about the yard with the assailants pursuing him; they overtook him and presumably stabbed him again. The entire incident took about five minutes. It appears that a guard had been on duty in the vegetable room supervising the prisoners at work there but he had stepped out of that room into the bread room for a few minutes and it

was during that period that the assault took place. There was an armed guard in the tower overlooking the yard. He observed the beginning of the scuffle and he immediately blew his whistle and called for help over the prison telephone. The guard who had been in the kitchen came out on the platform shortly thereafter and took the knives away from the assailants. The Court of Claims Judge found upon all the evidence that the claimant had failed to establish any negligence on the part of the State. Two of the principal charges of negligence advanced by the claimant were: (1) that the State had provided inadequate supervision and (2) that the guards on duty had negligently failed to prevent the assault. The finding by the Court of Claims in favor of the State upon these issues is supported by the weight of the evidence. The State seems to have provided adequate supervision. There was an adequate number of guards and they were placed in appropriate positions. It does not appear that the tower guard could reasonably have done anything which he failed to do in time to prevent the assault. The fact that the guard stationed in the vegetable room had left the prisoners unsupervised for a few minutes while he attended to his duties in the bread room did not necessarily indicate negligence on his part, in the absence of a showing of notice of an especially dangerous situation which required constant and unremitting supervision. There was no such showing in this case. The fact that the guard may have violated the rules promulgated by the Commissioner of Correction does not of itself give rise to a claim of negligence. The rules were designed to regulate the conduct of the prison employees from the standpoint of the prison administration and they do not necessarily set the standard of care owing by the State to the prisoners. The remaining principal claim of negligence on the part of the State was that the assailant Attillio should have been more closely guarded or segregated because he was especially dangerous. It appeared that at one time Attillio had been diagnosed as having a " psychosis with psychotic personality [and] episode of depression " and had been sent to Dannemora State Hospital. However, it further appeared that he had been discharged by that hospital as recovered and sent back to Elmira Reformatory, the institution to which he was then under sentence. There was no showing that the State was chargeable with notice that Attillio was so much more dangerous than the other prisoners that it was improper to allow him to perform the ordinary tasks in the prison or to allow him to mingle with the other prisoners. The claimant also contended that there was " bad blood " between the white prisoners and the Negroes (the decedent was a Negro) and that the prison administration should have known of this and should have taken special precautions to guard against an outbreak of violence. There was no proof to sustain this contention. There are other claims of wrongdoing on the part of the guards and the prison authorities but their rejection by the Court of Claims seems to us to be in accordance with the weight of the evidence. Judgment of dismissal unanimously affirmed, without costs. Present — Foster, P. J., Bergan, Coon, Halpern and Zeller, JJ. [See *post*, p. 928.]